UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Patrick Fish, individually and on behalf of all others similarly situated, <br><br>       Plaintiff, <br><br>   - against - <br><br>Tom's of Maine, Inc., <br><br>       Defendant | Class Action Complaint <br> Case No.: 6:23-CV-0110 (DNH/TWD) <br><br>Jury Trial Demanded |

Plaintiff alleges upon information and belief, except for allegations about Plaintiff, which are based on personal knowledge:

1. Tom's of Maine, Inc. ("Defendant") manufactures and labels toothpaste promoted as "Fluoride-Free" and "Antiplaque [& Whitening]" under its eponymous brand ("Product").





### I. PLAQUE BUILDUP LEADS TO GINGIVITIS

2. Plaque is a film of bacteria consisting of proteins, carbohydrates, microorganisms, and other organic and inorganic materials that accumulate on teeth.

3. Left unchecked, plaque leads to inflamed gums, an early stage of periodontal disease known as gingivitis.

4. According to the Food and Drug Administration ("FDA"), the American Dental Association ("ADA") and the American Academy of Periodontology ("AAP"), the most important objectives of plaque control are prevention of gingivitis, and dental caries.[1]

5. Though plaque control can be mechanical ("non-specific") or chemical ("specific"), neither provides sufficient therapeutic benefits to prevent and reverse gingivitis.

6. Mechanical methods rely on abrasive materials to remove plaque deposits and stains.

7. Such mechanical methods are effective mainly as delivery systems for ingredients like fluoride, which reharden and remineralize teeth, while making bacteria less tolerant to acid.

8. Chemical methods are based on antimicrobial or chemical activity.

## II. MORE CONSUMERS SEEK FLUORIDE FREE TOOTHPASTES

9. A large and growing percentage of consumers are seeking toothpastes without fluoride, based on a belief it is harmful.

10. However, these consumers still want to practice preventive oral health.

11. When consumers see the Product's "Antiplaque" representation, they will expect it is effective at preventing and reducing gingivitis.

12. However, the representation is misleading because the Product lacks ingredients sufficient to control, reduce, prevent, or remove plaque that leads to gingivitis.

---

[1] Dental caries is a disease of calcified tissues of teeth characterized by demineralization of the inorganic portion and destruction of the organic matrix.

**ingredients:** calcium carbonate, glycerin, water, xylitol, hydrated silica, natural flavor**, zinc citrate, sodium lauryl sulfate, carrageenan, sodium bicarbonate.

**ingredients:** calcium carbonate, glycerin, water, xylitol, hydrated silica, natural flavor**, zinc citrate, sodium lauryl sulfate, carrageenan, sodium bicarbonate.

**peppermint oil

13. Though the Product contains abrasive ingredients of calcium carbonate, hydrated silica and sodium bicarbonate, these are not capable of reducing plaque to prevent or control gingivitis.

14. While sodium bicarbonate has been shown to exert an antibacterial action, this was only in high dosages and with extended exposure time, circumstances different from someone brushing their teeth.

15. Nor is sodium lauryl sulfate, an anionic surfactant, capable of reducing plaque in a therapeutically significant way.

16. In fact, its binding to positively charged side groups of proteins may lead to denaturation or loss of biological activity through conformational changes in the molecules.

17. Finally, peppermint oil is unable to control plaque to the extent it can have a clinically significant effect on gingivitis.

18. By promoting the Product as "Fluoride Free" and "Antiplaque," consumers like Plaintiff expected it to contain non-fluoride ingredients whose effect on plaque would significantly control and prevent gingivitis.

19. While the label is permitted to describe the Product's antiplaque ability, related to its abrasive ingredient, "fluoride free" tells consumers that such qualities will be based on equally

effective fluoride alternatives, when this is false.

### III.   CONCLUSION

20.   The Product contains other representations and omissions which are false and misleading.

21.   As a result of the false and misleading representations, the Product is sold at a premium price, approximately no less than $6.99 for 5.5 oz, excluding tax and sales.

Jurisdiction and Venue

22.   Jurisdiction is based on the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

23.   The aggregate amount in controversy exceeds $5 million, including any statutory and punitive damages, exclusive of interest and costs.

24.   Plaintiff is a citizen of New York.

25.   Defendant is a Maine corporation.

26.   The class of persons Plaintiff seeks to represent includes persons who are citizens of different states from which Defendant is a citizen.

27.   The members of the class Plaintiff seeks to represent are more than 100, because the Product has been sold with the representations described here, in thousands of drug stores, convenience stores, big box stores, grocery stores and online, in the States Plaintiff seeks to represent.

28.   Venue is in this District because a substantial part of the events or omissions giving rise to these claims occurred in Oneida County, including Plaintiff's purchase, reliance on the identified statements, and subsequent awareness these were false and misleading.

Parties

29. Plaintiff Patrick Fish is a citizen of Utica, Oneida County, New York.

30. Defendant Tom's of Maine, Inc. is a Maine corporation with a principal place of business in Maine.

31. Plaintiff purchased the Product at stores including Walmart, 4765 Commercial Dr, New Hartford, New Yok 13413, between 2021 and 2023, and/or among other times.

32. Plaintiff read the statements "Fluoride Free" and "Antiplaque" and expected the Product's ability to remove and/or reduce plaque was connected to its ability to reduce gingivitis.

33. Plaintiff bought the Product at or exceeding the above-referenced price.

34. Plaintiff paid more for the Product than he would have had he known the above-referenced facts or would not have purchased it.

35. The value of the Product that Plaintiff purchased was materially less than its value as represented by Defendant.

36. Plaintiff chose between Defendant's Product and products represented similarly, but which did not misrepresent their attributes, requirements, features, and/or components.

Class Allegations

37. Plaintiff seeks certification under Fed. R. Civ. P. 23 of the following classes:

> **New York Class:** All persons in the State of New York who purchased the Product during the statutes of limitations for each cause of action alleged; and
>
> **Consumer Fraud Multi-State Class**: All persons in the States of Texas, South Dakota, Wyoming, Idaho, Alaska, Iowa, Mississippi, West Virginia, Arkansas, North Carolina, and Utah who purchased the Product during the statutes of limitations for each cause of action alleged.

38. Common questions of issues, law, and fact predominate and include whether

Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

39. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

40. Plaintiff is an adequate representative because his interests do not conflict with other members.

41. No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

42. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

43. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

<u>New York General Business Law ("GBL") §§ 349 and 350</u>

44. Plaintiff incorporates by reference all preceding paragraphs.

45. Plaintiff saw and relied on the label to believe the Product contained fluoride alternative ingredients to achieve a therapeutically significant reduction in plaque and gingivitis.

46. Plaintiff would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Violation of State Consumer Fraud Acts</u>
<u>(Consumer Fraud Multi-State Class)</u>

47. The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class are similar to the consumer protection statute invoked by Plaintiff and prohibit the use of unfair or deceptive business practices in the conduct of commerce.

48. The members of the Consumer Fraud Multi-State Class reserve their rights to assert

their consumer protection claims under the Consumer Fraud Acts of the States they represent and/or the consumer protection statute invoked by Plaintiff.

49. Defendant intended that members of the Consumer Fraud Multi-State Class would rely upon its deceptive conduct, which they did, suffering damages.

Breaches of Express Warranty,
Implied Warranty of Merchantability/Fitness for a Particular Purpose
and Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*

50. The Product was manufactured, identified, marketed, and sold by Defendant and expressly and impliedly warranted to Plaintiff that it contained fluoride alternative ingredients to achieve a therapeutically significant reduction in plaque and gingivitis.

51. Defendant directly marketed the Product to Plaintiff through its advertisements and marketing, through various forms of media, on the packaging, in print circulars, direct mail, product descriptions, and targeted digital advertising.

52. Defendant knew the product attributes that potential customers like Plaintiff were seeking and developed its marketing and labeling to directly meet their needs and desires, which was the absence of fluoride yet fluoride-equivalent ingredients.

53. The representations about the Product were conveyed in writing and promised it would be defect-free, and Plaintiff understood this meant it contained fluoride alternative ingredients to achieve a therapeutically significant reduction in plaque and gingivitis.

54. Defendant's representations affirmed and promised that it contained fluoride alternative ingredients to achieve a therapeutically significant reduction in plaque and gingivitis.

55. Defendant described the Product so Plaintiff believed it contained fluoride alternative ingredients to achieve a therapeutically significant reduction in plaque and gingivitis, which became part of the basis of the bargain that it would conform to its affirmations and promises.

56. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

57. This duty is based on Defendant's outsized role in the market for this type of Product, custodian of the Tom's of Maine brand.

58. Plaintiff recently became aware of Defendant's breach of the Product's warranties.

59. Plaintiff provided or provides notice to Defendant, its agents, representatives, retailers, and their employees that it breached the Product's warranties.

60. Defendant received notice and should have been aware of these issues due to complaints by third-parties, including regulators, competitors, and consumers, to its main offices, and by consumers through online forums.

61. The Product did not conform to its affirmations of fact and promises due to Defendant's actions.

62. The Product was not merchantable because it was not fit to pass in the trade as advertised, not fit for the ordinary purpose for which it was intended and did not conform to the promises or affirmations of fact made on the packaging, container, or label, because it was marketed as if it contained fluoride alternative ingredients to achieve a therapeutically significant reduction in plaque and gingivitis.

63. The Product was not merchantable because Defendant had reason to know the particular purpose for which the Product was bought by Plaintiff, because he expected that it contained fluoride alternative ingredients to achieve a therapeutically significant reduction in plaque and gingivitis, and he relied on its skill and judgment to select or furnish such a suitable product.

### Fraud

64. Defendant misrepresented and/or omitted the attributes and qualities of the Product, that it was "fluoride free" and contained fluoride alternative ingredients to achieve a therapeutically significant reduction in plaque and gingivitis.

65. Defendant knew the claims could mislead consumers yet sought to appeal to the large numbers seeking effective toothpastes without fluoride.

### Unjust Enrichment

66. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

### Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

   **WHEREFORE**, Plaintiff prays for judgment:

1. Certifying Plaintiff as representative and the undersigned as counsel for the classes;
2. Awarding monetary, statutory and/or punitive damages and interest;
3. Awarding costs and expenses, including reasonable attorney and expert fees; and
4. Other and further relief as the Court deems just and proper.

Dated:   January 27, 2023

Respectfully submitted,

/s/ Spencer Sheehan
Sheehan & Associates, P.C.
60 Cuttermill Rd Ste 412
Great Neck NY 11021
(516) 268-7080
spencer@spencersheehan.com