# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

Patrick Fish, individually and on behalf of all others similarly situated,

          Plaintiff,

      - against -

Tom's of Maine, Inc.,

          Defendant

6:23-cv-00110-DNH-TWD

First Amended
Class Action Complaint

Jury Trial Demanded

Plaintiff alleges upon information and belief, except for allegations about Plaintiff, which are based on personal knowledge:

1.    Tom's of Maine, Inc. ("Defendant") manufactures toothpaste promoted as "Fluoride-Free" yet "Antiplaque" and able to "fight[s] tartar buildup" ("Product").





2.    An increasing percentage of consumers are buying toothpastes without fluoride.

3.    While customers have their own reasons for eschewing fluoride, studies have shown

that the most important attribute to all toothpaste purchasers is the ability to prevent cavities.

4.      Unfortunately, consumers do not understand the distinctions and connections between plaque, gingivitis, periodontal diseases and cavities.

5.      Plaque is a film of bacteria that accumulate on teeth.

6.      Left unchecked, plaque leads to inflamed gums, an early stage of periodontal disease known as gingivitis, causing tooth decay, known as dental caries or cavities.

7.      Defendant's representatives have stated that "the products that don't contain fluoride that we offer do not promise that benefit" to fight cavities and that its customers understand this.

8.      On the Amazon webpage controlled by Defendant, where the Product is the second most popular toothpaste, it is described as able to "prevent tartar buildup that can weaken enamel and lead to cavities."



**Help Prevent Tartar Buildup**
This fluoride-free formula helps prevent tartar buildup that can weaken enamel and lead to cavities. Even better, it provides this antiplaque power using naturally derived ingredients.

9.      Customer reviews on Amazon's website confirm the messages expressed through labeling and other representations, with one person remarking that "If you brush regularly with or without fluoride, you reduce the risk of cavities," even though this statement is false.

10.     On the website of Walmart, where "Manufacturers, suppliers and others provide

what you see," the "Product details" state that "Toms of Maine is fluoride free and is a natural toothpaste as well as a whitening toothpaste that protects against cavities."

Product details                                                                                    ⌃

Tom's of Maine uses naturally sourced, naturally derived ingredients to create personal care products that work. Toms of Maine is fluoride free and is a natural toothpaste as well as a whitening toothpaste that protects against cavities.

We believe in living for today and tomorrow! We're guided by our Stewardship Model and over 45 years of expertise. Our passion is finding and combining naturally sourced and naturally derived ingredients to create personal care products that really work. Because our decisions have a lasting impact, we make them thoughtfully. Since 1970, our mission has been to help people live a more natural life. We're transparent about the ingredients we use. We explain where they come from, what they do, and how they are made, so that you can make the right choice for your family and yourself.

- FLUORIDE-FREE WHITENING: Tom's of Maine Fluoride-Free Antiplaque & Whitening toothpaste whitens teeth by removing surface stains
- NATURALLY-DERIVED INGREDIENTS: Toms natural toothpaste contains zinc citrate, a naturally occurring mineral, and xylitol, a natural ingredient derived from birch trees or corn
- NEVER TESTED ON ANIMALS: Toms fluoride free toothpaste contains no artificial flavors, colors, or preservatives and is never tested on animals
- CERTIFIED B CORP: Tom's of Maine meets the highest standards of verified social and environmental performance, public transparency, and legal accountability to balance profit and purpose

ⓘ **We aim to show you accurate product information.** Manufacturers, suppliers and others provide what you see here, and we have not verified it. See our disclaimer

11.    The Food and Drug Administration ("FDA") examined the labeling of products described as "antiplaque" to ensure public health was adequately protected and consumers were not misled. 68 Fed. Reg. 32232, Oral Health Care Drug Products for Over-the-Counter Human Use; Antigingivitis/Antiplaque Drug Products; Establishment of a Monograph (May 29, 2003) (proposed 21 C.F.R. Part 356).

12.    The Dental Plaque Subcommittee, American Dental Association ("ADA") and American Academy of Periodontology ("AAP") concluded that any reference to the reduction or prevention of plaque could mislead purchasers if it could not demonstrate a clinically significant effect on gingivitis and by extension, dental caries.[1]

13.    Though plaque control could be mechanical or chemical, neither provided sufficient

---

[1] Dental caries is a disease of calcified tissues of teeth characterized by demineralization of the inorganic portion and destruction of the organic matrix.

3

therapeutic benefits to prevent and reverse gingivitis or prevent cavities.

14.    The FDA affirmed that only fluoride was able to prevent cavities and function as an antiplaque agent, by strengthening enamel, the protective surface around teeth to prevent tooth decay and gingivitis.

15.    The FDA adopted the recommendations of the Subcommittee as part of the pending Final Monograph at 21 C.F.R. Part 356.

16.    The proposed indications for a product labeled as "antiplaque" were directly related to its control of gingivitis. 21 C.F.R. § 356.65(b).

17.    This included statements to the effect that it helps control, reduce, prevent or remove plaque that leads to gingivitis, an early form of gum disease, or bleeding gums.

18.    The Product's front label representation of "Antiplaque" and able to "fight tartar buildup," and its other statements about preventing cavities are misleading because it lacks ingredients capable of preventing cavities and removing plaque that leads to gingivitis. 21 C.F.R. § 355.10(a) and 21 C.F.R. § 356.65(a).



**ingredients:** calcium carbonate, glycerin, water, xylitol, hydrated silica, natural flavor**, zinc citrate, sodium lauryl sulfate, carrageenan, sodium bicarbonate.
**peppermint oil

19.    Though the Product contains abrasive ingredients of calcium carbonate, hydrated silica and sodium bicarbonate, these are not capable of reducing plaque to prevent or control gingivitis or preventing cavities.

20.     While sodium bicarbonate has been shown to exert an antibacterial action, this was only in high dosages and with extended exposure time, circumstances different from someone brushing their teeth.

21.     Nor is sodium lauryl sulfate, an anionic surfactant, capable of reducing plaque in a therapeutically significant way.

22.     Finally, neither zinc citrate nor peppermint oil is able to control plaque to the extent it can have a clinically significant effect on gingivitis or prevent cavities.

23.     While the label is permitted to describe the Product's ability to reduce plaque based on its abrasive ingredients, "antiplaque" in conjunction with the promise to fight tartar buildup, which is calcified or hardened plaque, tells consumers it will prevent gingivitis and that the reduction in plaque will be therapeutically significant, when this is false.

<u>Jurisdiction and Venue</u>

24.     Jurisdiction is based on the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

25.     The aggregate amount in controversy exceeds $5 million, including any statutory and punitive damages, exclusive of interest and costs.

26.     Plaintiff is a citizen of New York.

27.     Defendant is a Maine corporation.

28.     The class of persons Plaintiff seeks to represent includes persons who are citizens of different states from which Defendant is a citizen.

29.     The members of the class Plaintiff seeks to represent are more than 100, because the Product has been sold with the representations described here, in thousands of drug stores, convenience stores, big box stores, grocery stores and online, in the States Plaintiff seeks to

represent.

30.    Venue is in this District because a substantial part of the events or omissions giving rise to these claims occurred in Oneida County, including Plaintiff's purchase, reliance on the identified statements, and subsequent awareness these were false and misleading.

Parties

31.    Plaintiff Patrick Fish is a citizen of Utica, Oneida County, New York.

32.    Defendant Tom's of Maine, Inc. is a Maine corporation with a principal place of business in Maine.

33.    As a result of the false and misleading representations about its antiplaque ability and preventing cavities, the Product is sold at a premium price, approximately no less than $6.99 for 5.5 oz, excluding tax and sales.

34.    Plaintiff purchased the Product at stores including Walmart, 4765 Commercial Dr, New Hartford, New Yok 13413, between 2021 and 2023, and/or among other times.

35.    Plaintiff read the statements "Fluoride Free," "Antiplaque," "Fights Tartar Buildup" and website statements about its ability to prevent cavities and expected the Product would provide a therapeutically significant reduction in plaque and prevent cavities, even though it did not contain fluoride.

36.    Plaintiff bought the Product at or exceeding the above-referenced price.

37.    Plaintiff paid more for the Product than he would have had he known the above-referenced facts or would not have purchased it.

38.    The value of the Product that Plaintiff purchased was materially less than its value as represented by Defendant.

39.    Plaintiff chose between Defendant's Product and products represented similarly, but

6

which did not misrepresent their attributes, requirements, features, and/or components.

Class Allegations

40.    Plaintiff seeks certification under Fed. R. Civ. P. 23 of the following classes:

> **New York Class:** All persons in the State of New York who purchased the Product during the statutes of limitations for each cause of action alleged; and

> **Consumer Fraud Multi-State Class**: All persons in the States of Texas, South Dakota, Wyoming, Idaho, Alaska, Iowa, Mississippi, West Virginia, Arkansas, North Carolina, and Utah who purchased the Product during the statutes of limitations for each cause of action alleged.

41.    Common questions of issues, law, and fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

42.    Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

43.    Plaintiff is an adequate representative because his interests do not conflict with other members.

44.    No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

45.    Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

46.    Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

New York General Business Law ("GBL") §§ 349 and 350<br>(New York Class)

47.     Plaintiff incorporates by reference all preceding paragraphs.

48.     Plaintiff saw and relied on the label and websites to believe the Product would provide antiplaque benefits that were therapeutically significant and prevent cavities, even though it did not contain fluoride.

49.     Plaintiff would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Violation of State Consumer Fraud Acts
(Consumer Fraud Multi-State Class)

50.     The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class are similar to the consumer protection statute invoked by Plaintiff and prohibit the use of unfair or deceptive business practices in the conduct of commerce.

51.     The members of the Consumer Fraud Multi-State Class reserve their rights to assert their consumer protection claims under the Consumer Fraud Acts of the States they represent and/or the consumer protection statute invoked by Plaintiff.

52.     Defendant intended that members of the Consumer Fraud Multi-State Class would rely upon its deceptive conduct, which they did, suffering damages.

Breaches of Express Warranty,
Implied Warranty of Merchantability/Fitness for a Particular Purpose
and Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*

53.     The Product was manufactured, identified, marketed, and sold by Defendant and expressly and impliedly warranted to Plaintiff that would provide antiplaque benefits that were therapeutically significant and prevent cavities, even though it did not contain fluoride.

54.     Defendant directly marketed the Product to Plaintiff through its advertisements and marketing, through various forms of media, on the packaging, in print circulars, direct mail, product descriptions, and targeted digital advertising.

55.    Defendant knew the product attributes that potential customers like Plaintiff were seeking and developed its marketing and labeling to directly meet their needs and desires, which was antiplaque benefits that were therapeutically significant and preventing cavities, even though it did not contain fluoride.

56.    The representations about the Product were conveyed in writing and promised it would be defect-free, and Plaintiff understood this meant it would provide antiplaque benefits that were therapeutically significant and prevent cavities, even though it did not contain fluoride.

57.    Defendant's representations affirmed and promised that it would provide antiplaque benefits that were therapeutically significant and prevent cavities, even though it did not contain fluoride.

58.    Defendant described the Product so Plaintiff believed it would provide antiplaque benefits that were therapeutically significant and prevent cavities, even though it did not contain fluoride, which became part of the basis of the bargain that it would conform to its affirmations and promises.

59.    Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

60.    This duty is based on Defendant's outsized role in the market for this type of Product, custodian of the Tom's of Maine brand.

61.    Plaintiff recently became aware of Defendant's breach of the Product's warranties.

62.    Plaintiff provided or provides notice to Defendant, its agents, representatives, retailers, and their employees that it breached the Product's warranties.

63.    Defendant received notice and should have been aware of these issues due to complaints by third-parties, including regulators, competitors, and consumers, to its main offices,

and by consumers through online forums.

64.    The Product did not conform to its affirmations of fact and promises due to Defendant's actions.

65.    The Product was not merchantable because it was not fit to pass in the trade as advertised, not fit for the ordinary purpose for which it was intended and did not conform to the promises or affirmations of fact made on the packaging, container, or label, because it was marketed as if it would provide antiplaque benefits that were therapeutically significant and prevent cavities, even though it did not contain fluoride.

66.    The Product was not merchantable because Defendant had reason to know the particular purpose for which the Product was bought by Plaintiff, because he expected that it would provide antiplaque benefits that were therapeutically significant and prevent cavities, even though it did not contain fluoride, and he relied on its skill and judgment to select or furnish such a suitable product.

Fraud

67.    Defendant misrepresented and/or omitted the attributes and qualities of the Product, that it would provide antiplaque benefits that were therapeutically significant and prevent cavities, even though it did not contain fluoride.

68.    Defendant knew the claims could mislead consumers yet sought to appeal to the large numbers seeking toothpastes without fluoride who still ranked cavity prevention as their top priority.

Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1.  Certifying Plaintiff as representative and the undersigned as counsel for the classes;

2.  Awarding monetary, statutory and/or punitive damages and interest;

3.  Awarding costs and expenses, including reasonable attorney and expert fees; and

4.  Other and further relief as the Court deems just and proper.

Dated:   April 28, 2023

                                    Respectfully submitted,

                                    /s/ Spencer Sheehan
                                    Sheehan & Associates, P.C.
                                    60 Cuttermill Rd Ste 412
                                    Great Neck NY 11021
                                    (516) 268-7080
                                    spencer@spencersheehan.com

11