UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

PATRICK FISH, individually and on
behalf of all others similarly situated,

                     Plaintiff,

           -v-                 6:23-CV-110

TOM'S OF MAINE, INC.,

                     Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                OF COUNSEL:

SHEEHAN & ASSOCIATES, P.C.    SPENCER SHEEHAN, ESQ.
Attorneys for Plaintiff          THEODORE T. HILLEBRAND, ESQ.
60 Cuttermill Road, Suite 412
Great Neck, NY 11021

GORDON REES SCULLY       CLAIR E. WISCHUSEN, ESQ.
MANSUKHANI, LLP           PETER G. SIACHOS, ESQ.
Attorneys for Defendant
18 Columbia Turnpike, Suite 220
Florham Park, NJ 07932

DAVID N. HURD
United States District Judge

## DECISION and ORDER

## I. INTRODUCTION

On January 27, 2023, plaintiff Patrick Fish ("Fish" or "plaintiff") filed this

putative class action against defendant Tom's of Maine, Inc. ("Tom's" or

"defendant").  Dkt. No. 1.  Plaintiff's seven-count amended complaint[1] alleges that defendant engaged in deceptive business practices, fraud, and breach of implied and express warranties under state and federal law.  Dkt. No. 12.

On May 26, 2023, Tom's moved pursuant to Federal Rules of Civil Procedure ("Rule") 12(b)(6) to dismiss Fish's amended complaint.  Dkt. No. 17.  The motion has been fully briefed and will be considered on the basis of the submissions without oral argument.

## II. <u>BACKGROUND</u>

Tom's is a Maine corporation that manufactures and sells a variety of personal care products including an "antiplaque & whitening" fluoride-free toothpaste (the "Product").  Am. Compl. ¶¶ 1, 26.  The Product is packaged in 5.5-ounce tubes and sold in cartons shown below:



---

[1] Fish filed an amended complaint as of right on April 28, 2023.  Dkt. No. 12.

Def.'s Mem., Dkt. No. 17-1 at 1.[2]  Tom's sells the Product in both brick-and-mortar stores across the United States and through online retailers, including Amazon.com and Walmart.com.  Am. Compl. ¶¶ 8–10.  Both the Product's tube and the carton label describe it as "antiplaque" and able to "fight tartar buildup."  *Id.* at ¶ 1.  On the Amazon.com product page, Tom's describes the Product as follows:

> This fluoride-free formula helps prevent tartar buildup that can weaken enamel and lead to cavities. Even better, it provides this antiplaque power using naturally derived ingredients.

Am. Compl. ¶ 8.  On the Walmart.com product page, Tom's describes the Product in a similar fashion:

> Toms of Main is fluoride free and is a natural toothpaste as well as a whitening toothpaste that protects against cavities.

*Id.* at ¶ 10.

Fish alleges that he was deceived because defendant's online product descriptions (the "Website Statements") and the Product's labeling caused him to reasonably believe the Product prevents gingivitis and periodontal diseases.[3]  Am. Compl. ¶ 23.  According to plaintiff, this is false because the

---

[2] Pagination corresponds to CM/ECF.

[3] Gingivitis is the early stage of periodontal disease, causing individuals to suffer from inflamed gums.  Am. Compl. at ¶ 6.

Product lacks ingredients capable of preventing these diseases. *Id*. at ¶¶ 19–22.

Fish purchased the Product in-store at his local Walmart between the years 2021–23 for at least $6.99 per tube. Am. Compl. at ¶ 33. According to plaintiff, he paid more for the Product than he would have if he had known it was incapable of preventing gingivitis and periodontal disease. *Id*. at ¶ 37. Fish proposes to certify a class of consumers across multiple states who were deceived by defendant in a similar fashion. *Id*. at ¶ 40.

## III. <u>LEGAL STANDARD</u>

To survive a Rule 12(b)(6) motion to dismiss, the complaint's factual allegations must be enough to elevate the plaintiff's right to relief above the level of speculation. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). So, while legal conclusions can provide a framework for the complaint, they must be supported with meaningful allegations of fact. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). In short, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

To assess this plausibility requirement, the court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in the non-movant's favor. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In doing so, the court generally confines itself to the facts alleged in the pleading, any documents attached to the complaint or incorporated into it

by reference, and matters of which judicial notice may be taken. *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016).

## IV.  DISCUSSION

Plaintiff brings this consumer-rights action on behalf of himself and two putative classes: (1) a New York class, which is defined as all persons in the state of New York who purchased the Product during the applicable limitations period (the "New York Class"); and (2) a multi-state class, which is defined as all persons in the states of Alaska, Arkansas, Idaho, Iowa, Mississippi, North Carolina, South Dakota, Texas, Utah, West Virginia, and Wyoming who purchased the Product during the applicable limitations period (the "Multi-State Class").  Am. Compl. at ¶ 40.

Fish alleges that Tom's marketed the Product using materially misleading statements concerning its efficacy against gingivitis and periodontal disease. *Id.* at ¶ 23.

### A.  Consumer Protection Claims

First, Tom's seeks dismissal of Fish's consumer protection claims, which arise under two sections of New York's General Business Law ("GBL") §§ 349, 350 and various unidentified consumer protection statutes.  Def.'s Mem. at 6.

#### 1.  New York General Business Law §§ 349, 350

Fish's amended complaint asserts claims on behalf of himself and the proposed New York Class under GBL §§ 349, 350, alleging that Tom's engaged in deceptive advertising and business practices.  Am. Compl. ¶ 6–7.

"New York's consumer protection laws prohibit '[d]eceptive acts or practices,' as well as '[f]alse advertising,' in the conduct of any business, trade, or commerce, or in furnishing any service in the state." *Scism v. Ethicon, Inc.*, 2020 WL 1245349, at *8 (N.D.N.Y. Mar. 16, 2020) (quoting N.Y. GEN. BUS. LAW §§ 349, 350).  "The standard for recovery under General Business Law § 350, while specific to false advertising, is otherwise identical to § 349." *Mason v. Reed's Inc.*, 515 F. Supp. 3d 135, 143 (S.D.N.Y. 2021) (quoting *Goshen v. Mut. Life Ins. Co.*, 774 N.E.2d 1190, 1195 (N.Y. 2002)).

"To state a claim under either section, a plaintiff must allege that: (1) the defendant's conduct was consumer-oriented; (2) the defendant's act or practice was deceptive or misleading in a material way; and (3) the plaintiff suffered an injury as a result of the deception[.]" *Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v Matthew Bender & Co.*, 150 N.Y.S.3d 79, 84 (N.Y. 2021) (citation omitted).

Tom's argues that Fish's GBL claims should be dismissed because he fails to plausibly allege that the Product label or the Website Statements are

materially misleading to a reasonable consumer.[4]  *See* Def.'s Mem. at 7; Def.'s Reply, Dkt. No. 19 at 2.  As relevant here, "[c]onduct is materially misleading if it is likely to mislead a reasonable consumer acting reasonable under the circumstances."  *Mason*, 515 F. Supp. 3d at 143 (quoting *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d 741, 745 (N.Y. 1995)).

"[W]hile plaintiffs are not required to meet the heightened pleading requirements of Rule 9(b) for GBL claims, plaintiffs must . . . plausibly allege that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Chimienti*, 2023 WL 6385346, at *5 (quoting *Lee v. Mondelez Int'l, Inc.*, 637 F. Supp. 3d 116, 132 (S.D.N.Y. 2022)).

In evaluating a plaintiff's factual allegations against the reasonable consumer standard, the reviewing court must analyze the alleged deceptive advertisement in context.  *See Fink v. Time Warner Cable*, 714 F.3d 739, 742 (2d Cir. 2013).  "Courts examining misleading product claims often rely on common sense observations and judicial experience."  *Lumbra v. Suja Life,*

---

[4]  Tom's also argues that Fish failed to plausibly allege that he saw and relied upon the Website Statements prior to purchasing the Product.  However, plaintiff's amended complaint clearly states that he "saw and relied on the label and websites to believe the Product would provide antiplaque benefits that were therapeutically significant and prevent cavities, even though it did not contain fluoride[,]" and that "[p]laintiff would not have purchased the Product or paid as much if the true facts had been known, suffering damages."  Am. Compl. ¶¶ 48–49.

*LLC*, 2023 WL 3687425, at *3 (N.D.N.Y. 2023). "It is well settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer." *Fink*, 714 F.3d at 741.

Fish's theory of deception in this case is premised on the connection between plaque, tartar, gingivitis, and periodontal disease. *See* Am. Compl. ¶ 4–6. Fish argues that Tom's deceives consumers who purchase the Product at a premium seeking to prevent gingivitis and periodontal diseases because defendant labels it as "antiplaque" and "promis[ing] to fight tartar buildup, which is hardened plaque[.]" *Id.* at ¶ 23.

Measured against this standard, Fish fails to adequately plead deception. Notably, Fish does not deny that the Product is antiplaque. Am. Compl. ¶ 23 ("[T]he label is permitted to describe the Product's ability to reduce plaque based on its abrasive ingredients[.]"). Rather, he argues that by labeling the Product as "antiplaque" "in conjunction with the promise to fight tartar buildup, which is calcified or hardened plaque" defendant's statements mislead consumers to reasonably believe that it will prevent gingivitis *and* that the reduction in plaque will be "therapeutically significant." *Id.*

Drawing all reasonable inferences in Fish's favor, his complaint fails to allege, beyond conclusory remarks regarding the connections between plaque, gingivitis, periodontal diseases and cavities, how a reasonable consumer would be misled by the Product label or website statements to mistake a

toothpaste that is "antiplaque" and that "prevent[s] tartar buildup" as a product that will prevent gingivitis or periodontal disease. Am. Compl. ¶ 6.

Nowhere on the Product label or in the Website Statements do Tom's represents or describe to the Product as "*antigingivitic*," or that it prevents periodontal disease, or that the reduction in plaque will be therapeutically significant. Def.'s Mem. at 3. Nor does plaintiff allege that the presence of *any* plaque or tartar is synonymous with gingivitis or periodontal disease. Am. Compl. ¶¶ 5–6. Thus, plaintiff's misconceptions are aspirational at best.

Fish also fails to adequately plead that a "reasonable consumer" would be misled by Tom's alleged deception. Plaintiff's complaint only refers to his own misconceptions, "consumers" generally, and a review left by *one* Amazon customer. *See* Am. Compl. ¶¶ 4, 9, 23, 34–39; *see also Chimienti*, 2023 WL6385346, at *10. Thus, labeling the Product as "antiplaque," "fights tartar buildup," and "fights cavities" in this context could not lead a reasonable consumer to believe that the Product promises to prevent diseases of the mouth and gums.

In short, Fish has failed to plausibly allege that a reasonable consumer would be misled by the Product label or the Website Statements to believe the Product would provide therapeutically significant antiplaque benefits and prevent cavities. Am. Compl. ¶¶ 48, 55. Accordingly, plaintiff's GBL claims must be dismissed.

### 2. **Multi-State Consumer Protection Laws**

Fish has also brought claims under various, unnamed consumer fraud acts of the states of the Multi-State Class.  Am. Compl. ¶ 50.  Tom's argues that Fish's multi-state consumer fraud act claims should also be dismissed because plaintiff fails to identify the specific laws he contends Tom's violated *or* how they were allegedly violated.[5]  Def.'s Reply at 6.

In opposition, Fish responds that the multi-state consumer fraud acts are similar to his New York GBL §§ 349, 350 claims and argues that "[d]efendant intended that members of the Consumer Fraud Multi-State Class would rely upon its deceptive conduct, which they did, suffering damages."  Am. Compl. ¶¶ 50, 52.

Even assuming that Fish's various, unnamed state-law consumer fraud act claims require the same showing of deceptive conduct as the GBL, plaintiff has failed to plausibly allege that Tom's engaged in deceptive conduct for the reasons just explained.  However, plaintiff's multi-state claims would also fail for a more obvious reason: plaintiff's complaint fails to apprise defendant of the allegations it must defend against in this lawsuit.

---

[5] Inasmuch as Tom's has conceded that Fish's "claims under the other consumer protection statutes apply the same reasonable consumer standard," Def.'s Mem. at 6, defendant appears to retract this statement in its reply brief.  *See* Def.'s Reply at 6.  In its reply, defendant argues that plaintiff has failed to place it on notice of what he ultimately hopes to prove with regard to the multi-state claims.  *Id.*

*See Brownell v. Starbucks Coffee Co.*, 2023 WL 4489494, at *6 (N.D.N.Y. July 12, 2023) (Scullin, J.).

On that point, plaintiff's counsel recently received two decisions in cases filed in this District that clearly demonstrate this principle.[6]  *See Brownell*, 2023 WL 4489494, at *6 (dismissing plaintiff's multi-state consumer fraud act claims for failure to identify the consumer fraud acts that were violated); *Smith v. Adidas*, 2023 WL 5672576, at *7 (N.D.N.Y. Sept. 1, 2023) (Sannes, J.) (dismissing plaintiff's multi-state consumer fraud act claims for failure to identify "the relevant state-law statutes or otherwise identify the applicable state law theories of liability").

In *Brownell*, Judge Scullin dismissed plaintiff's multi-state consumer fraud act claims on the ground that plaintiff failed to identify the acts she alleged defendant violated or *how* defendant violated them.  *Brownell*, 2023 WL 4489494, at *6.  In dismissing the multi-state claims—pleaded identically as plaintiff has in this case—*Brownell* concluded that plaintiff "made it impossible for [D]efendant to assess what she ultimately hopes to prove," thus failing to comport with Rule 8's pleading standards.  *Id.* (alteration in

---

[6] Indeed, plaintiff's counsel was recently held in contempt of civil court in the *Brownell* case after failing to successfully show cause why he should not be sanctioned for filing over eighteen frivolous lawsuits in this district.  *Brownell v. Starbucks Coffee Co.*, 5:22-CV-1199 (FJS) (N.D.N.Y. Nov. 30, 2023) (Dkt. No. 41).

original) (citing *Male v. Tops Friendly Mkts.*, 2008 WL 1836948, at *4 (W.D.N.Y. Apr. 22, 2008)).

In *Smith*, Chief Judge Sannes assessed the plausibility of a nearly identical pleading and dismissed plaintiff's counsel's multi-state consumer fraud claims where he "failed to identify the relevant state-law statutes or otherwise identify the applicable state law theories" and deprived defendant of the requisite notice of the claims against it.  *Smith*, 2023 WL 5672576, at *7 (collecting cases).

Like the complaints dismissed in *Brownell* and *Smith*, Fish's operative complaint in this action does not identify the consumer fraud statutes on which he purports to rely, nor has he elucidated how defendant violated these statutes in his amended complaint or in his opposition papers.  Am. Compl. ¶¶ 50–52; Pl.'s Opp'n, Dkt. No. 18 at 7.  Instead, plaintiff merely proposes certification of a putative class composed of consumers of Alaska, Arkansas, Idaho, Iowa, Mississippi, North Carolina, South Dakota, Texas, Utah, West Virginia, and Wyoming who he alleges were deceived by Tom's.  Am. Compl. ¶¶ 50–52.

In short, Fish's amended complaint fails to provide Tom's with sufficient notice of his multi-state claims against it.  *See Brownell*, 2023 WL 4489494, at *6; *Smith*, 2023 WL 5672576, at *7.  Accordingly, plaintiff's multi-state consumer fraud act claims must be dismissed.

## B. <u>Warranty Claims</u>

Fish also brings claims for breach of implied and express warranties under the New York Uniform Commercial Code ("UCC") and the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301.  Am. Compl. ¶¶ 53–66.  Tom's has moved to dismiss Fish's breach of warranty claims for failure to plead adequate pre-suit notice, privity, and/or breach.  Def.'s Mem. at 14.

"To state a claim under the MMWA, plaintiffs must adequately plead a cause of action for breach of written or implied warranty under state law." *Lumbra*, 2023 WL 3687425, at *6 (quoting *Garcia v. Chrysler Grp., LLC*, 127 F. Supp. 3d 212, 232 (S.D.N.Y. 2015)).  Therefore, evaluating the plausibility of plaintiff's MMWA claim necessarily begins with an analysis of his state-law warranty claims.  *Id.*

Under New York law, "[b]reach of warranty claims protect consumers who rely on either an explicit or implicit fact or promise that the seller knew the consumer had in mind and relied on when purchasing." *MacNaughton v. Young Living Essential Oils, LC*, 67 F.4th 89, 100 (2d Cir. 2023) (collecting cases).  Pre-suit notice requires a buyer to notify the seller of the breach "within a reasonable time after he discovers or should have discovered any breach . . . or be barred from any remedy."  N.Y. U.C.C. § 2-607(3).

New York courts have not spoken with a high degree of clarity about what constitutes adequate pre-suit notice.  *Compare Panda Cap. Corp., v. Kopo*

*Int'l, Inc.*, 662 N.Y.S.2d 584, 586 (N.Y. App. Div. 1997), *with Mid Island LP v. Hess Corp.*, 2013 WL 6421281, *4 (N.Y. Sup. Ct. 2013).  While the Second Department has suggested that filing a complaint is sufficient to provide a defendant with the requisite notice under the UCC in one case, that case is distinguishable because plaintiff also provided traditional notice through a series of objections *prior* to the commencing of the civil action.  *See Panda Cap. Corp., v. Kopo Int'l, Inc.*, 662 N.Y.S.2d 584, 586 (N.Y. App. Div. 1997) ("This argument overlooks the fact that the complaint and subsequent amended complaint in this action themselves constituted such notice . . . and that the plaintiff had repeatedly made its objections to Kopo's pattern of deficient performance known prior to the shipments reflected in the invoices.").

Further, despite Fish's contention that "notice requirements for breaches of warranty have long been jettisoned in New York for retail sales," Pl.'s Opp'n at 8, this narrow exception has only been applied to cases in which the plaintiff also alleges physical injury as a result of the breach.  *See Lugones v. Pete & Gerry's Organic, LLC*, 440 F. Supp. 3d 226, 245 (S.D.N.Y. 2020) ("The Court agrees with its sister courts' analysis of the New York cases regarding this exception, and finds that it is inapplicable where, as here, Plaintiffs have not alleged any physical or personal injury as a result of Defendant's alleged breach."); *Colella v. Atkins Nutritionals, Inc.*, 348 F. Supp. 3d 120, 143–44

(E.D.N.Y. 2018); *Tomasino v. Estee Lauder Cos., Inc.*, 2015 WL 4715017, at

*4 (E.D.N.Y. Aug. 7, 2015) ("Indeed, every case of which I am aware in which

courts implementing New York law declined to apply the notice requirement

to a breach of contract claim amounted to a tort claim in which the plaintiff

suffered some personal injury.").  Plaintiff only alleges an injury based on the

premium price he paid for the Product—not injury resulting from his use of

the Product.  Am. Compl. ¶ 36–37.

Fish's only allegation regarding pre-suit notice in this case states that he

"recently became aware of [d]efendant's breach of the Product's warranties,"

Am. Compl. ¶ 61, and that he "*provided or provides* notice of [d]efendant's

breach of the Product's warranties," *Id.* at ¶ 62 (emphasis added).  But

plaintiff has not pleaded with any specificity what form of pre-suit notice he

provided to defendant—other than that of third parties.  *See Id.* at ¶ 63

("Defendant received notice and should have been aware of these issues due

to complaints by third-parties, including regulators, competitors, and

consumers, to its main offices and by consumers through online forums.").  As

such, plaintiff leaves considerable doubt as to whether he provided defendant

the requisite pre-suit notice.

However, even if pre-suit notice were otherwise held to be adequate for the

purpose of this motion practice, Fish's warranty claims also depend on a

plausible allegation of privity between the parties.  *See MacNaughton*, 67

F.4th at 101 (citation omitted) ("[U]nder New York law, express and implied breach of warranty claims seeking to recover for financial injuries, like those here, require a showing of privity between the manufacturer and the plaintiff unless an exception applies.").

Fish does not allege privity between himself and Tom's in his amended complaint; instead, plaintiff alleges that he purchased the Product in "stores including Walmart." Am. Compl. ¶¶ 34, 53–66. Plaintiff argues in his opposition papers that privity is not required in this case because he is entitled to the third-party beneficiary exception to this general rule. Pl.'s Opp'n at 9. However, plaintiff's complaint is devoid of any allegations of fact that a contract existed between Tom's and Walmart for his benefit—only that the Product was directly marketed to him. *Id.* at ¶ 53–54.

This omission is fatal to plaintiff's warranty claims. *See MacNaughton*, 67 F.4th at 101 (holding that plaintiff did not plausibly allege the third-party beneficiary exception to privity because she failed to allege the existence of a contract between defendant and a supplier for her benefit). Fish has not plausibly alleged the existence of privity between himself and Tom's, which precludes relief under the UCC and MMWA. *See Lumbra*, 2023 WL 3687425, at *6. Accordingly, plaintiff's warranty claims shall be dismissed.

## C. **Fraud**

Finally, Fish brings a common law fraud claim against Tom's for its "misrepresentat[ion] and/or omi[ssion] [of] the attributes and qualities of the Product[] that it would provide antiplaque benefits that were therapeutically significant and prevent cavities even though it did not contain fluoride." Am. Compl. ¶ 67. Defendant has moved to dismiss plaintiff's fraud claim for failure to identify a material misrepresentation or to allege fraudulent intent. Def.'s Mem. at 18–19.

"To maintain a fraud claim in New York, a plaintiff must allege that: (1) the defendant made a material[,] false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the misrepresentation, and (4) the plaintiff suffered damages as a result of such reliance." *Reynolds-Sitzer v. EISAI, Inc.*, 586 F. Supp. 3d 123, 135 (N.D.N.Y. 2022) (citation omitted). "Additionally, allegations of fraud must meet the heightened pleading standard set forth in Federal Rule of Civil Procedure 9(b), which requires a party alleging fraud to 'state with particularity the circumstances constituting fraud[.]'" *Lumbra*, 2023 WL 3687425, at *8 (quoting FED. R. CIV. P. 9(b)).

For the reasons discussed *supra*, Fish has not plausibly alleged that Tom's engaged in any deceptive conduct. Accordingly, plaintiff's common law fraud claim necessarily fails for failure to adequately plead that defendant made a materially false representation.

**D.  Leave to Amend**

The final question is whether plaintiff should be permitted leave to amend his pleading, which he has previously amended once as of right.  In the concluding paragraph of Fish's opposition papers, he requests that "the Court should deny Defendant's Motion *or in the alternative grant leave to file a Second Amended Complaint.*"  Pl.'s Opp'n at 10 (emphasis added).

Rule 15(a)(2) provides that leave to amend should be freely given "when justice so requires."  FED. R. CIV. P. 15(a)(2).  While the Second Circuit "strongly favors liberal grant of an opportunity to replead after dismissal of a complaint under Rule 12(b)(6)," leave to amend is not warranted when it would be futile to do so.  *Chimienti*, 2023 WL 6385346, at *8 (quoting *Noto v. 22nd Century Grp., Inc.*, 25, F.4th 95, 107 (2d Cir. 2022)); *MSP Recovery Claims, Series LLC v. Hereford Ins. Co.*, 66 F.4th 77, 90 (2d Cir. 2023) ("A court . . . may deny leave to amend for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party.").

As relevant here, "[f]utility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure."  *In re Tribune Co. Fraudulent Conv. Litig.*, 10 F.4th 147, 175 (2d Cir. 2021) (quoting *Empire Merchs., LLC v. Reliable Churchill LLLP*, 902 F.3d 132, 139 (2d Cir. 2018)).

Upon review, leave to further amend will be denied.  First, plaintiff has already amended his pleading on these claims once as of right, and it has been found deficient for the reasons just explained *supra*.  Second, Local Rule 15.1(a) requires a party seeking leave to amend to submit a copy of the proposed pleading "such that the court may consider the proposed amended pleading as the operative pleading."  N.D.N.Y.R. 15.1(a).  But plaintiff has not complied with this Local Rule.

Third, even putting aside plaintiff's failure to comply with the Local Rule, he has offered nothing in his opposition papers to suggest that he could cure the deficiencies identified here.  Because it appears that amendment would be futile, leave to amend will be denied.  *See Chimienti*, 2023 WL 6385346, at *8 (collecting cases).  Accordingly, plaintiff's unadorned requested for leave to amend shall be denied.

## V.  <u>CONCLUSION</u>

Fish has failed to plausibly allege that defendant's label, or the Website Statements that the Product is "antiplaque" and prevents tartar, mislead reasonable consumers to believe that the Product will prevent gingivitis or periodontal disease.  Because plaintiff has failed to plead deceptive conduct, his consumer fraud, warranty, and fraud claims must fail.

Therefore, it is

ORDERED that

1.  The motion to dismiss is GRANTED; and

2.  The amended complaint is DISMISSED with prejudice.

The Clerk of the Court is directed to terminate the pending motion, enter a judgment accordingly, and close the file.

IT IS SO ORDERED.


Dated:  December 8, 2023
       Utica, New York.

David N. Hurd
U.S. District Judge